**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

DIANNE ARMSTRONG                                      PLAINTIFF

VERSUS                          CIVIL ACTION NO. 5:04cv134-DCB-JMR

ST. PAUL FIRE & MARINE
INSURANCE COMPANY                           INTERVENOR PLAINTIFF

VERSUS

INTERNATIONAL PAPER COMPANY                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment [**docket entry no. 89**].  Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### UNDISPUTED FACTS

Plaintiff Dianne Armstrong was employed by Kamtech, Inc. as a Boilermaker, i.e., one who services boilers.  International Paper ("IP") hired Kamtech to perform maintenance on a Recovery Boiler at its Redwood, Mississippi paper mill.  This maintenance was scheduled to take place during IP's two-week annual plant shut down in April of 2001.  To get to the boiler room at the Redwood plant, workers must use a freight elevator with vertical bi-parting doors. When she attempted to shut the elevator's doors, Armstrong's left hand was caught between the doors, and she was injured.  As of

-1-

April 27, 2005, St. Paul Fire and Insurance Company, Kamtech's workers' compensation insurance carrier, had paid Anderson $249,293.00 in compensation benefits and medical expenses.

Armstrong filed suit in the Circuit Court of Warren County, Mississippi claiming that IP's inadequate maintenance of the freight elevator caused her injuries.  On May 17, 2004, IP removed this diversity action.  As allowed by Mississippi Code Section 71-3-71, St. Paul intervened as a plaintiff seeking reimbursement for past and future benefits paid to Armstrong.  IP now moves for summary judgment on two separate theories: (1) IP claims that it is a statutory employer as set forth in <u>Doubleday v. Boyd Constr. Co.</u>, 418 So. 2d 823, 826-27 (Miss. 1982); therefore, it is entitled to immunity from Anderson's suit, and (2) IP claims that it is Anderson's employer under Section 71-3-71 and thus immune from suit.  The latter argument was raised for the first time in IP's Reply Brief in Support of Motion for Summary Judgment [docket entry no. 93].

## DISCUSSION

### I.   Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record,

including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).[1]

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. <u>Conkling v. Turner</u>, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Krim v. BancTexas Group, Inc.</u>, 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." <u>Id</u>. at 252. Moreover, the nonmoving party must make a showing sufficient to

---

[1]A contested fact is "material" when it has the potential to change the outcome of the case. <u>Ginsburg 1985 Real Estate P'ship v. Cadle Co.</u>, 39 F.3d 528, 531 (5th Cir. 1994) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." <u>Id</u>.

establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


**II.  Application of Mississippi Code Section 71-3-7 and Doubleday's Statutory Employer Immunity**

-4-

In pertinent part, Section 71-3-7 states, "In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of [workers'] compensation to employees of the subcontractor, unless the subcontractor has secured such payment." Mississippi's workers' compensation law further provides that an employer's obligation to provide compensation shall be the exclusive remedy for an injured employee or his representatives; thus, employers are immune from tort suits concerning employees' injuries arising out of employment. Miss. Code Ann. § 71-3-9. The Mississippi Supreme Court has extended this immunity to general contractors who require their subcontractors to carry workers' compensation insurance. Doubleday v. Boyd Constr. Co., 418 So. 2d 823, 826-27 (Miss. 1982). Accordingly, "when a true general contractor-subcontractor relationship exists, as contemplated by § 71-3-7, Mississippi deems the general contractor a statutory employer" who is entitled to immunity. Culpepper v. Double R, Inc., 269 F. Supp. 2d 739, 741 (S.D. Miss. 2003).

For IP to be adorned with the status of a statutory employer, the relationship among the parties must be such that (1) IP was a general contractor, (2) Kamtech was a subcontractor, and (3) Anderson was an employee of Kamtech. "[M]erely labeling an entity as a 'contractor' does not make it a 'contractor' within the meaning of Miss. Code Ann. § 71-3-7." Id. at 741 n.3. A

-5-

subcontractor is defined as "one who enters into a contract, express or implied, for performance of an act with a person who has already contracted for its performance." <u>Rodgers v. Phillips Lumber Co.</u>, 130 So. 2d 856, 857 (Miss. 1961), <u>quoted in</u> <u>Nations v. Sun Oil Co.</u>, 695 F.2d 937 (5th Cir. 1983). <u>See also</u> BLACK'S LAW DICTIONARY 1155 (7th ed. 1999) (defining a subcontractor as "one who is awarded a portion of an existing contract by a contractor."). Accordingly, a litigant can only be deemed a general contractor, within the meaning of Section 71-3-7, if he first executed a contract to perform some act, and then the litigant subsequently contracted with another party (i.e., the subcontractor) to perform all or part of that same act.

In <u>Nash v. Damson Oil Co.</u>, 480 So. 2d 1095 (Miss. 1985), Damson Oil leased mineral rights throughout Mississippi, established oil wells on the leases, and hired an independent contractor to service various wells. After Nash, who was employed by the independent contractor, was injured on a well site, he brought a negligence action against Damson. <u>Nash</u>, 480 So. 2d at 1098. Damson was granted summary judgment on the ground that he was a statutory employer within the meaning of Section 71-3-7 and therefore entitled to immunity. <u>Id.</u> The Mississippi Supreme Court reversed, holding that Damson was not a general contractor because "Damson's interest, use, and activities with respect to the premises are wholly different in nature from those of . . . a

general or prime contractor . . . Damson is an operator or even in a sense an owner *pro hac vice*, a lessee." Id. at 1100.  To help clarify the holding, Presiding Justice Lee, joined by three other Justices, concurred by saying that "the simple answer" was that Damson Oil was a type of owner (it owned the mineral lease) and as an owner, it could not "sublet" work to a subcontractor.  Id. at 1101 (Lee, P.J., concurring).  See also Sketoe v. Exxon Co., USA, 188 F.3d 596, 605 (5th Cir. 1999) (holding under similar facts as Damson that Exxon was an owner and therefore not a general contractor under a Federal Longshoreman's workers' compensation law, which is nearly identical to Section 71-3-7).

At the time of the accident, IP owned the Redwood paper mill. The *sine qua non* of a general contractor-subcontractor relationship is the existence of a contract binding the general contractor to make some performance; then, a sublet of that performance to a subcontractor.  As owner, IP was not "under contract" to perform any act; therefore, there was no performance which could be subcontracted.  See Rodgers, 130 So. 2d at 857.  Accordingly, IP was not a general contractor and is not entitled to the immunity of a statutory employer under Section 71-3-7.

## III. Whether IP is Armstrong's "Employer" within the Meaning of Section 71-3-71, Thereby Entitling It to Immunity

Mississippi Code Section 71-3-71 states, "The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer . . . shall not affect

-7-

the right of the employee or his dependents to sue any other party at law for such injury." Thus, an employer of an injured employee is immune from suit pursuant to Section 71-3-9, but "any other party," such as one who hires an independent contractor, is not immune. In its Motion for Summary Judgment, IP initially states that "[a]t all times relevant herein Kamtech was an independent contractor of International Paper." (M. Summ. J., at 1.) In its Reply to the plaintiff's response to the summary judgment motion, IP states that the issue "is whether International Paper is 'an employer' pursuant to Section 71-3-71 [and thereby immune from suit], or whether it is 'another party' subject to third-party action against it." (Reply, at 2.) Also in its reply, IP relied on the affidavit of Mr. John Adams, who is the Health and Safety Manager for IP's Redwood mill. Since IP's "employer" argument and affidavit were presented for the first time in its reply brief, the plaintiff has yet to have an opportunity to respond. Accordingly, the Court reserves ruling on this issue until the plaintiff responds.

Further briefing, however, should be limited to the specific issue of whether IP was Armstrong's "employer" or "any other party." The issue of whether an individual is an employee or an independent contractor is an issue of law. <u>Frutcher v. Lynch Oil Co.</u>, 522 So. 2d 195, 199 (Miss. 1988). The are two tests used to determine whether an employer-employee relationship exists under

Mississippi law.  Under the control test, IP must show that it had a "right to control" Armstrong such that she was an employee and not an independent contractor.  See Brown v. L.A. Penn & Son, 227 So. 2d 470, 474 (Miss. 1969).  Relevant factors of the control test are (1) direct evidence of the employer's right to control the alleged employee, (2) the method of payment, (3) furnishing of the alleged employee's equipment, and (4) the right to fire the alleged employee.  Davis v. The Clarion Ledger, --- So. 2d ---, 2006 WL 2807469, at *2 (Miss. Ct. App. Oct. 3, 2006).

The other way to establish an employer-employee relationship is through the "nature of the work" test.  See Boyd v. Crosby Lumber & Mfg. Co., 166 So. 2d 106 (Miss. 1964).  An employment relationship exists under the nature of the work test when the plaintiff's work is "enmeshed with, and []an integral part of, [the] employer's business."  Brown, 227 So. 2d at 474.  The analysis under this test turns on two prongs.  First, the Court must consider "the character of the [plaintiff's] work or business," to which the relevant inquiries are (1) how skilled the work is, (2) how much of a separate calling or enterprise the plaintiff's work or business is, and (3) to what extent is the plaintiff's business expected to "carry its own accident burden."  Boyd, 166 So. 2d at 110.  Second, the Court must consider the "relation [of the plaintiff's work] to the employer's business," and this prong's relevant inquiries are (1) how much is the

plaintiff's work "a regular part of the employer's regular work," (2) whether the plaintiff's work is continuous or intermittent, and (3) "whether the duration of [the plaintiff's work] is sufficient to amount to the hiring of continuous services as distinguished from the contracting for the completion of a particular job." <u>Id.</u> For an employment relationship to be established under the nature of the work test, the alleged employee's work must truly be an integral part of the employer's business. <u>See</u> <u>Brown</u>, 227 So. 2d at 474 (finding employment relationship between a seller of pulpwood and its logger); <u>Davis</u>, 2006 WL 2807469, at *3 (finding employment relationship between newspaper and newspaper deliverer).

**CONCLUSION**

Since IP is the owner of its Redwood paper mill and not a general contractor, it is not entitled to the statutory employer immunity provided by <u>Doubleday</u> and Section 71-3-7.  The issue of whether Anderson is an employee or independent contractor of IP, however, has yet to be fully briefed.  As such, the Court reserves ruling on that issue until it has been appropriately presented to the Court.  Accordingly,

IT IS HEREBY ORDERED that the defendant's Motion for Summary Judgment [**docket entry no. 89**] is **DENIED IN-PART.**

IT IS FURTHER ORDERED that the plaintiff has ten (10) days from the entry of this order to respond to the defendant's Section 71-3-71 argument.

IT IS FURTHER ORDERED that the defendant has five (5) days from the date of the plaintiff's response to reply.

SO ORDERED, this the 31st day of October, 2006.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE